IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

T E JURKOWICH,
    Petitioner,

v.                                  Case No.  3:10cv189/MCR/CJK

EDWIN G. BUSS,
    Respondent.
_____

REPORT AND RECOMMENDATION

    This case filed under 28 U.S.C. § 2254 is before the Court upon respondent's Motion to Dismiss Mixed Petition for Writ of Habeas Corpus. (Doc. 19).  Petitioner has responded in opposition to dismissal. (Doc. 24).  Based on the state court record and relevant law, the undersigned concludes that the petition is a mixed petition, as it includes unexhausted claims.  The petition is potentially subject to dismissal.  In light of this conclusion, however, additional briefing should be allowed in order to inform the decision whether dismissal, as opposed to a stay, is appropriate.

BACKGROUND AND PROCEDURAL HISTORY

    Petitioner commenced this proceeding on June 1, 2010, by filing a petition for writ of habeas corpus raising seven claims:

1.    "Trial counsel was ineffective for failing to properly investigate petitioner's requested defense of insanity";

> 2. "Trial counsel was ineffective for refusing to provide petitioner with a viable defense, not guilty by reason of insanity requested by petitioner";
>
> 3. "Judge Jan Shackleford (The Court) acted in error and/or with misconduct/abuse of discretion when she ruled a inanity defense was unavailable to petitioner";
>
> 4. "It was error and/or misconduct by the Court to hold that petitioner represent himself if he was no[t] satisfied with the representation of trial counsel Peter Mitchell";
>
> 5. "It was error of the Court to accept incorrect information in imposing sentence upon petitioner";
>
> 6. "It is unlawful to increase or ignore a sentence imposed by a Trial Court"; and
>
> 7. "Petitioner's classification upon his release as a career criminal violates the V, VI, VIII, and/or XIV admend [sic] of the U.S. Constitution."

(Doc. 1). With regard to exhaustion, petitioner asserts that Grounds 1-6 were raised on direct appeal, but that Ground 7 "was just inadvertly [sic] discovered and raising it in the lower court will deny the petitioner a meaningful challenge by a unbiased and to the constitutionally [sic] of his detention." (*Id*., p. 5).

On May 9, 2011, respondent filed the now-pending motion to dismiss. Respondent seeks dismissal on the grounds that the petition is a mixed petition (a petition containing both exhausted and unexhausted claims), arguing that petitioner's two ineffective assistance claims "have not been properly exhausted yet for the next 45 days are still exhaustable." (Doc. 19, p. 3). Specifically, respondent maintains that although petitioner presented his ineffective assistance claims on direct appeal,

that did not constitute proper exhaustion, because the rule in Florida is that claims of ineffective assistance of counsel are not reviewable on direct appeal unless there has been the constructive denial of counsel, or the ineffectiveness is established on the face of the record, neither of which applied in petitioner's case. (*Id*., pp. 7-8).

Because respondent's motion to dismiss relates only to the two ineffective assistance claims, the following background and procedural history of the state court proceeding is confined to those issues.

STATE COURT BACKGROUND AND PROCEDURAL HISTORY

On April 4, 2007, an amended information was filed in the Circuit Court for Escambia County, Florida, Case No. 06-CF-6282, charging petitioner with escape, resisting an officer with violence, and two counts of battery on a law enforcement officer. (Doc. 19, Ex. B, pp. 2-3).[1]  Prior to trial, defense counsel (Peter Mitchell) filed a motion to appoint a mental health expert to evaluate petitioner's sanity at the time of the alleged offenses. (*Id*., p. 8).  The motion was granted.  Defense counsel later filed a motion for a competency evaluation, which was granted.  (Ex. A, p. 4).

After petitioner complained that defense counsel was not properly investigating and pursuing an insanity defense, the trial court held a *Nelson* hearing.  *See Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973); *Gamble v. State*, 877 So.2d 706, 717 (Fla. 2004) (explaining the *Nelson* procedure: "When a defendant seeks to discharge court-appointed counsel on the ground of incompetency, the court must determine whether there is reasonable cause to believe appointed counsel is not rendering effective assistance to the defendant.  If there is reasonable cause to believe counsel

---

[1] Hereafter, all references to exhibits will be to those provided at Doc. 19, unless otherwise noted.

is not rendering effective assistance, the court should discharge counsel and appoint substitute counsel. If the trial court finds that there is not reasonable cause to discharge counsel, the court should advise the defendant that if appointed counsel is discharged without cause, the defendant may be required to proceed to trial without court-appointed representation.").

The *Nelson* hearing was held on November 8, 2007. After questioning petitioner and defense counsel, the court determined there was not reasonable cause to believe Mr. Mitchell was rendering ineffective assistance. (Ex. B, pp. 14-20). During the hearing, Mr. Mitchell indicated he had reviewed the reports of the two court-appointed examiners and determined that although he was fully aware of his client's desire to pursue an insanity defense, that was not something counsel could do in this case. (*Id.,* p. 17). In light of counsel's definitive statement, no further record was developed concerning the basis or viability of an insanity defense, save for one comment by petitioner that he knew of "a lot of lay witnesses" who could confirm petitioner's mental state. (*Id.,* p. 19). Petitioner was given the opportunity to represent himself, but declined. (*Id.*, p. 20).

As the trial judge was discussing scheduling matters, petitioner asked to confer with defense counsel. (*Id.*, p. 24). After the two conferred, defense counsel advised the court that the State had earlier tendered a plea offer of five years state prison, and that petitioner wanted to accept that offer and tender a no contest plea. (*Id.*, pp. 25-26). The State indicated its willingness to extend the earlier offer, clarifying that petitioner would be sentenced to concurrent five-year sentences as a prison releasee reoffender ("PRR"). (*Id.*, p. 26). Petitioner signed a written plea agreement to that effect, reserving the right to appeal any "pretrial motions or hearings." (*Id.*, pp. 47-

50). The trial court then conducted a plea colloquy during which petitioner indicated he wished to enter the plea and was satisfied with the services of his lawyer. (*Id.,* p. 29). The trial court accepted petitioner's plea, adjudicated him guilty as charged on all four counts, and sentenced petitioner to five years in prison on each count to run concurrent with each other. (*Id.*, pp. 27-34). Judgment was rendered November 8, 2007. (*Id.*, pp. 55-62). Due to a change in Florida law as to PRR sentencing, petitioner's sentence was corrected on April 14, 2008, to remove the PRR designation as to two of the counts. (Ex. A, p. 7).

Defense counsel filed a notice of appeal and statement of judicial acts to be reviewed, identifying as one issue the trial court's ruling on petitioner's *Nelson* hearing. (*Id.*, p. 67). The court appointed new counsel for the appeal. Appellate counsel filed an "Anders Brief" delineating as a possible appellate issue the propriety of the trial court's ruling on petitioner's motion to discharge counsel, but asserting that the ruling appeared to be legal. (Ex. F). The Florida First District Court of Appeal ("First DCA") authorized petitioner to file a *pro se* brief. (Ex. G). The court advised the State that it was not required to serve an answer brief, noting that "If the panel of judges which considers the merits of this appeal finds that the record or briefs support any arguable claims, additional briefing will be ordered in accordance with In re Anders Briefs, 581 So. 2s 149 (Fla. 1991)." (*Id.*). Petitioner filed an amended brief, in which he raised four issues with various sub-parts. (Ex. H). In the first issue petitioner argued he was denied the right to effective assistance of counsel when counsel failed to explore and pursue petitioner's requested defense of insanity, and that the trial court erred in refusing to appoint alternative trial counsel. (*Id.*, pp. ii, 6-12). On May 29, 2009, the First DCA per curiam affirmed without written

opinion. *Jurkowich v. State*, 10 So.3d 635 (Fla. 1st DCA 2009) (Table). The mandate issued June 24, 2009. (Ex. J).

In the present habeas corpus matter, respondent asserts petitioner's ineffective assistance claims were not fairly presented to the state court, because the *Nelson* hearing "is not a full evidentiary development from which an ineffective assistance claim could be properly raised on direct appeal." Respondent further explains:

> [T]he Nelson hearing during which petitioner's complaints were presented did not amount to development sufficient to exhaust the claim. Defense counsel was not questioned under oath as to his decisions and the necessary confidential matters of trial strategy were specifically not enquired [sic] into. . . . Thus the ineffectiveness claims were not fairly presented because under state law they had to be developed in a post conviction motion filed in the trial court.

(Doc. 19, p. 10). According to respondent, petitioner had, at the time of respondent's filing, considerable time remaining to raise his ineffectiveness claims in a postconviction motion under Florida Rule of Criminal Procedure 3.850. (Doc. 19, p. 11). Because a Rule 3.850 motion had not been filed at the time of respondent's submission, respondent submits that the ineffectiveness claims were both unexhausted and not yet procedurally barred. Respondent set out in **bold letters** that the two year time period for petitioner's Rule 3.850 motion would not expire until June 24, 2011, some 46 days after the date of the motion to dismiss. Without addressing the appropriateness of a stay, respondent urges the court to require petitioner to chose between deleting the unexhausted claims and proceeding with the exhausted (or procedurally defaulted) ones, or having his entire petition dismissed without prejudice.

Petitioner responds that his ineffective assistance claims were properly presented to the trial court and preserved for direct appeal, that the claims are apparent from the face of the record developed at the *Nelson* hearing, and that they were properly presented to and ruled upon by the appellate court. (Doc. 24). Therefore, concludes petitioner, they are exhausted.

My review of the state court online docket in petitioner's criminal case reveals that a Rule 3.850 motion was docketed in the state trial court on June 30, 2011. *See http://www.escambiaclerk.com/xml/xml.asp?ucase_id=35881912*. Petitioner has not mentioned this fact, much less disclosed here his postconviction claims.

## ANALYSIS

<u>Relevant Federal Law</u>

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas petitioner must first exhaust state-court remedies. 28 U.S.C. § 2254(b)(1)(A). A petitioner exhausts a claim when he affords the state court "a full and fair opportunity to address and resolve the claim on the merits." *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1343 (11th Cir. 2004) (quotation omitted). A "mixed" habeas petition is one that includes both exhausted and unexhausted claims. *Pliler v. Ford*, 542 U.S. 225, 227, 124 S. Ct. 2441, 159 L. Ed. 2d 338 (2004). In *Rose v. Lundy*, 455 U.S. 509, 510, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982), the Supreme Court held that, when confronted with a mixed petition, the district court must dismiss the petition in its entirety, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the

district court." In imposing this "total exhaustion rule," the Supreme Court noted that it would have the benefits of "encourag[ing] state prisoners to seek full relief first from the state courts" and "reliev[ing] the district courts of the difficult if not impossible task of deciding when claims are related." *Id*. at 518-19, 102 S. Ct. 1198.

In addition to codifying the total exhaustion requirement, AEDPA created a one-year statute of limitations for federal habeas corpus petitions. 28 U.S.C. § 2244(d)(1). Although the limitations period is tolled while a "properly filed" application for state postconviction or other collateral review is pending, it is not tolled while a federal petition is pending. *Duncan v. Walker*, 533 U.S. 167, 181-82, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001). The Supreme Court recognized that the passage of AEDPA created a problem in that "petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims" because petitioners cannot control when district courts will resolve the exhaustion question, rendering numerous petitions time-barred when re-filed in federal court. *Rhines v. Weber*, 544 U.S. 269, 275, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). To address potential time-bar problems, the Supreme Court held in *Rhines* that district courts have discretion to employ, in limited circumstances, "stay and abeyance" procedures to hold a § 2254 petition in abeyance while the petitioner exhausts his previously-unexhausted claims. *Id*. at 275-77, 125 S. Ct. 1528. "[S]tay and abeyance is only appropriate" if: (1) the petitioner had good cause for his failure to exhaust his claims; (2) the unexhausted claims are not plainly meritless; and (3) there is no indication that the petitioner engaged in abusive litigation practices or intentional delay. *Id*. at 277-78, 125 S.Ct. 1528. The Supreme Court further observed that if these conditions were met, "it likely would be an abuse

of discretion for a district court to deny a stay and to dismiss a mixed petition." *Id*. at 278, 125 S. Ct. 1528. Conversely, if the district court determines that a stay is inappropriate, it should allow the petitioner to delete the unexhausted claims and proceed with the exhausted claims if dismissal would "impair the petitioner's right to obtain federal relief." *Id*.

Thus, when a district court is confronted with a mixed petition, the district court must (1) make findings as to whether a stay and abeyance is warranted; and (2) if a stay is unwarranted, offer the petitioner a choice of either dismissing the petition and returning to state court to exhaust his claims, or amending the habeas petition to present only exhausted claims. *See Thompson v. Sec'y for the Dep't of Corr.*, 425 F.3d 1364, 1366 (11th Cir. 2005) (vacating and remanding to consider whether a stay was warranted because the district court offered petitioner the choice to delete his unexhausted claims before making this threshold finding); *see also Rhines*, *supra*.

Relevant State Law

In *Smith v. State*, 998 So.2d 516 (Fla. 2008), the Florida Supreme Court explained the proper procedure for presenting ineffective assistance claims:

> Claims of ineffective assistance of trial counsel are usually presented in a postconviction motion under Florida Rule of Criminal Procedure 3.850. Under that rule, the circuit court can be specifically presented with the claim, and apply the *Strickland* standard with reference to the full record and any evidence it may receive in an evidentiary hearing, including trial counsel's testimony. Thus, ineffective assistance claims are not usually presented to the judge at trial, and we have repeatedly stated such claims are not cognizable on direct appeal. *E.g., Martinez v. State*, 761 So.2d 1074, 1078 n. 2 (Fla. 2000) ("With rare exception, ineffective assistance of counsel claims are not cognizable on direct appeal."); *McKinney v. State*, 579 So.2d 80, 82

(Fla. 1991) ("Claims of ineffective assistance of counsel are generally not reviewable on direct appeal but are more properly raised in a motion for postconviction relief."); *Kelley v. State*, 486 So.2d 578, 585 (Fla. 1986) (same); *State v. Barber*, 301 So.2d 7, 9 (Fla. 1974) (holding that claims of ineffective assistance of counsel "cannot properly be raised for the first time on direct appeal" because the trial court has not previously ruled on the issue). We recognize that "[t]here are rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue." *Blanco v. State*, 507 So.2d 1377, 1384 (Fla. 1987); *see also Gore v. State*, 784 So.2d 418, 437–38 (Fla. 2001) ("A claim of ineffective assistance of counsel may be raised on direct appeal only where the ineffectiveness is apparent on the face of the record."); *Mansfield v. State*, 758 So.2d 636, 642 (Fla. 2000) (same). Thus, in the rare case, where both prongs of *Strickland* – the error and the prejudice – are manifest in the record, an appellate court may address an ineffective assistance claim.

*Smith* at 522-23.

Petitioner's ineffectiveness claims on direct appeal did not meet the exceptional criteria described in *Smith*. The record developed at the *Nelson* hearing was a limited colloquy to determine whether there was <u>reasonable cause</u> to believe counsel was providing ineffective assistance with regard to investigating and pursuing an insanity defense. (Ex. B, pp. 14-22). In that regard, the trial judge limited her questioning of defense counsel to whether counsel considered an insanity defense and petitioner's competence to stand trial, what counsel did to investigate these issues, whether counsel's failure to file a notice of intent to rely on an insanity defense was a conscious decision on counsel's part, and whether counsel's decision was based on the facts of petitioner's case in relation to the Florida standard of insanity. The trial

judge avoided eliciting specific evidence protected under the attorney-client privilege about petitioner's mental state (such as the expert reports) and defense counsel's trial preparation, strategy and decision-making process (including counsel's conversations with petitioner, the experts and potential witnesses). *See* Ex. B, p. 17 (excerpt from *Nelson* hearing transcript in which trial judge explained she was not trying to "pierce" the attorney-client privilege, but rather attempting to create a record sufficient for appellate review of her *Nelson* inquiry and ruling). Although the record was sufficient to resolve the *Nelson* issue, it was insufficient to resolve an ineffective assistance claim on the merits (for example, assessing the probability petitioner could have met the Florida standard of insanity[2]).

Based on defense counsel's answers and petitioner's arguments, the trial court made a limited finding of no reasonable cause to believe counsel was rendering ineffective assistance. The issue noted for possible appellate review was likewise limited to whether the trial court's ruling on petitioner's motion to discharge counsel was proper (i.e., whether the trial court properly conducted the *Nelson* inquiry).

In petitioner's *pro se* brief on appeal, he raised numerous fact allegations that were not presented to the trial court or developed at the *Nelson* hearing. Tellingly, these allegations do not cite to the record of the state court proceedings. In order for the appellate court to determine whether petitioner's ineffective assistance claims had

---

[2]"The legal test for insanity in Florida in criminal cases has long been the '*M'Naghten* Rule.'" *Patton v. State*, 878 So.2d 368, 374 (Fla. 2004) (citations omitted). "Under *M'Naghten*, an accused is not criminally responsible if, at the time of the alleged crime, the defendant, by reason of a mental disease or defect, (1) does not know of the nature or consequences of his or her act; or (2) is unable to distinguish right from wrong." *Patton* at 375 (citations omitted).

merit, far more detail (such as those "facts" presented in petitioner's *pro se* direct appeal brief and pled in the instant federal habeas petition) would have been required in the state matter.

As suggested by *Smith*, those rare instances where direct review of ineffective assistance claims will be available, have been quite well delineated by case law. The Florida cases demonstrate that the appropriate forum for factual development of such claims is almost always the trial court, not the appellate court. Moreover, a review of these cases demonstrates quite graphically the qualitative distinction between those cases eligible for direct review, and those reserved for collateral attack. *Compare Kidd v. State*, 978 So.2d 868, 869 (Fla. 4th DCA 2008) (holding that defendant's claims of ineffective assistance of counsel were not cognizable on direct appeal, where such claims were not apparent on the face of the record; defendant claimed counsel was ineffective for allowing the State to introduce inadmissible hearsay in the form of prior testimony of an unavailable witness even though the State failed to prove the unavailability of the witness; however, the record showed trial counsel did not simply fail to object, but that defendant and his counsel discussed the matter and decided for their own reasons to allow the State to admit the testimony uncontested), *and Criner v. State*, 943 So.2d 224, 226 (Fla. 1st DCA 2006) (same, where defendant's ineffective assistance claims concerned strategic decisions made by defense counsel), *and Burgess v. State*, 776 So.2d 1035, 1036 (Fla. 4th DCA 2001) (same, where defendant argued his attorney should have moved to suppress the victim's identification of him at a live post-information, pre-trial lineup because he did not have counsel present; however, the record did not clearly show that defendant

was unrepresented by counsel at the lineup), *with Foster v. State*, 387 So.2d 344, 345-46 (Fla. 1980) (reversing conviction on direct appeal where record demonstrated counsel's representation was impaired by conflicting interests – court-appointed attorney jointly represented defendant and a state witness who testified against defendant), *and Ross v. State*, 726 So.2d 317, 319 (Fla. 2d DCA 1998) (addressing ineffective assistance claim on direct appeal where record revealed counsel failed to object to prosecutor's inappropriate and prejudicial comments during closing argument – prosecutor repeatedly bolstered arresting officer's credibility, attacked and ridiculed defendant (characterizing his testimony as "preposterous," "nonsense," and "bologna"), and attacked and ridiculed defense witnesses (describing them as "pathetic," "ridiculous," "inappropriate," "insulting" to the jury's intelligence, "totally incredible," and as having "just flat out" lied), *and Gordon v. State*, 469 So.2d 795, 797 (Fla. 4th DCA 1985) (addressing ineffective assistance claim on direct appeal where the record revealed defense counsel failed to object to 104 instances of improper questions and comments by the prosecutor). In the cases allowing direct review, the appellate court suffered no inability to glean all necessary facts from the trial court record. Simply put, the same may not be said here.

In light of the foregoing, the undersigned agrees with respondent that the instant federal habeas petition is a mixed petition. Nevertheless, before the Court reaches the question whether the petition should be dismissed or petitioner allowed to amend to remove the unexhausted claims, the Court must first determine whether a stay is appropriate. Relevant to that inquiry is whether petitioner's ineffective assistance claims were raised in his recently filed Rule 3.850 motion, and whether

that motion was timely. This is relevant, because "[if] it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." *Kelley*, 377 F.3d at 1351 (internal quotation marks omitted). The unexhausted claims would be treated as if procedurally defaulted. *See Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999); *see also Chambers v. Thompson*, 150 F.3d 1324, 1326 (11th Cir. 1998) (a petition is "due to be denied with prejudice [if] there are no state remedies left to exhaust and all of the claims are either meritless or procedurally defaulted."). Also relevant to the stay-and-abeyance inquiry is what showing, if any, petitioner can make on the three *Rhines* factors. As neither party has addressed these issues, the Court should require additional briefing.

Accordingly, it is respectfully RECOMMENDED:

1. That respondent's motion to dismiss (doc. 19) be GRANTED to the limited extent the petition is deemed a mixed petition, but DENIED WITHOUT PREJUDICE in all other respects. The Court will re-consider respondent's arguments concerning dismissal or amendment if it determines a stay is unwarranted.

2. That this case be remanded to the undersigned for briefing and determination of whether a stay is appropriate.

At Pensacola, Florida this 15th day of July, 2011.

/s/ *Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).